MOBIL OIL CORPORATION, Plaintiff,

v.

ADVANCED ENVIRONMENTAL
RECYCLING TECHNOLOGIES,
INC., Defendant.

ADVANCED ENVIRONMENTAL
RECYCLING TECHNOLOGIES,
INC., Counterclaim Plaintiff,

v.

MOBIL OIL CORPORATION, Mobil Corporation, Mobil Chemical Company, Inc., Arthur C. Ferguson, and Paul M. Herbst, Counterclaim Defendants.

Civ. A. No. 92–351–JJF.

United States District Court,
D. Delaware.

May 20, 1994.

Charles S. Crompton, Jr., William J. Marsden, Jr. of Potter Anderson & Corroon, Wilmington, DE, Richard E. Kurtz, Albert T. Keyack of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, PA, and John B. Williams, Patrick J. Coyne, and Mary E. Madigan of Collier Shannon Rill & Scott, Washington, DC, for Mobil Oil Corp., Mobil Corp., Mobil Chemical Co., Inc., Arthur C. Ferguson, and Paul M. Herbst.

Douglas E. Whitney, R. Judson Scaggs, Jr., Lisa B. Baeurle, Christine M. Hansen, and Maryellen Noreika of Morris Nichols Arsht & Tunnell, Wilmington, DE, for Advanced Environmental Recycling Technologies, Inc.

*MEMORANDUM OPINION*

FARNAN, District Judge.

## I. *INTRODUCTION*

Presently before the Court is AERT's Motion for a New Trial filed pursuant to Rule 59 of the Federal Rules of Civil Procedure. AERT and Mobil both manufacture composite wood products from recycled plastic and wood fiber. On June 9, 1992, Mobil sued AERT for a declaratory judgment that four of AERT's composite product patents are invalid, unenforceable and not infringed upon by Mobil. AERT counterclaimed, alleging antitrust violations, Lanham Act violations, breach of confidential relationship and patent infringement. The Court bifurcated the patent issues, which were tried to a jury.

The jury found that Mobil did not infringe AERT's patents and that all four patents were invalid because they were obvious and anticipated by the prior art. The jury also found, in response to interrogatories, that the inventors and their attorneys failed to disclose material information and made material misrepresentations to the United States Patent and Trademark Office with the intent to deceive.

## II. *DISCUSSION*

AERT asserts three grounds in support of its motion for a new trial: (1) Mobil misrepresented the law of disclosure by arguing to the jury AERT was required to disclose all similar technology to the Patent Office, (2) Mobil misrepresented the facts to the jury by arguing that AERT could not get a patent once it disclosed Hearthbrite to the Patent Office, and (3) the jury verdict was prejudiced by the alleged repeated assertions of personal opinion by Mobil's counsel. AERT argues that the three types of Mobil misconduct alone or together render it "reasonably probable" that the jury verdict was improperly influenced, and have caused a miscarriage of justice that only a new trial can remedy. AERT argues that Mobil's misconduct not only affected the jury's findings with regard to inequitable conduct, but "inexorably affected the jury's decision on all issues." Opening Brief, at 26.

### A. *Legal Standard*

The United States Court of Appeals for the Third Circuit has articulated the standard by which district courts are to exercise their discretion in granting new trials. The Court must ascertain whether the alleged improper conduct has made it "reasonably probable" that the verdict was influenced by the prejudicial conduct, such that a miscarriage of justice would result if a new trial were not granted. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir.1992) (citing *Draper v. Airco*, 580 F.2d 91, 94 (3rd Cir.1978)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). A "[d]istrict court's power to grant a new trial motion is limited to those circumstances 'where a miscarriage of justice would result if the verdict were to stand.'" *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir.1993) (quoting *Fineman*, 980 F.2d at 211). AERT must not only establish improper conduct on the part of Mobil, AERT must also demonstrate that the jury verdict was prejudiced by the improper conduct.

### B. *Inequitable Conduct Findings*

To the extent that AERT is arguing that a new trial is warranted based upon the preju-

dicial impact Mobil's misconduct had on the jury's inequitable conduct findings, the Court will deny the motion. The Court submitted the inequitable conduct issues to the jury for advisory findings only. Although the Court finds that there was no prejudice caused by the alleged misconduct, even if there were, its impact on the jury's findings on inequitable conduct is inconsequential. Therefore, the Court will only address AERT's arguments as they pertain to the prejudicial impact the alleged misconduct may have had on the jury's findings of obviousness and anticipation.

## C. *Invalidity Findings*

■ Even if Mobil's conduct were improper, the Court finds that the alleged improper conduct could not have prejudiced the jury's verdict. The jury did not rely solely on the Hearthbrite information to find that all four of AERT's patents are invalid as obvious. The jury cited a multitude of other prior art references to support its findings.

The jury's invalidity findings based upon obviousness with regard to the '910 patent were supported by six references other than Hearthbrite, including two patents and four printed publications. With regard to the '605 patent, the jury cited five references other than Hearthbrite to support its finding of obviousness. The jury did not cite Hearthbrite at all in finding the '046 patent invalid. Finally, the jury's finding that the '406 patent would have been obvious was supported by six references other than Hearthbrite.

Aside from the jury's obviousness findings, the jury also found that one or more of the claims in each of the four patents was described in a printed publication in this or a foreign country, publicly used, offered for sale, or sold more than one year prior to the date of application for the patent and that one or more of the claims in each of the four patents was known or used by persons other than the inventors prior to the date of the inventions.

Moreover, the jury found a wholly separate ground for finding inequitable conduct, i.e. AERT's misrepresentation to the patent office that the "Erb patent (using leaves) was foundation of AERT's process." Each of the jury's remaining findings independently support the jury's invalidity verdict and unenforceability advisory findings notwithstanding the alleged prejudicial impact of Mobil's statements related to Hearthbrite. In light of the scope and detail of the jury's findings, the Court finds that the jury was not prejudiced by the isolated statements of counsel alleged here.

■ Notwithstanding that the jury had several independent grounds upon which it invalidated AERT's patents, the Court is not convinced in the first instance that a miscarriage of justice has resulted from the alleged misconduct on the part of Mobil. The first manner in which Mobil is alleged to have prejudiced the jury verdict is by persistently misrepresenting to the jury that AERT and its attorneys were required to disclose "all similar technology." AERT contends this misled the jury to conclude that AERT withheld material information from the Patent Office, with an intent to deceive and that every AERT patent was invalid over Hearthbrite.

At the outset of trial and again during closing instructions, the Court informed the jury that counsels' statements of the law were not to be followed, but that the jury was to follow the instructions on the law given by the Court. There is no evidence that the jury failed to heed the Court's instructions. The fact that the jury, in response to Interrogatory Number 23 regarding intent to deceive the Patent Office, cited AERT's failure to disclose Hearthbrite to the Patent Office as "similar technology" does not indicate that the jury failed to follow the Court's instructions. Rather, it indicates that the jury agreed with Mobil's argument that AERT's failure to cite Hearthbrite despite instructions from its own counsel to cite all similar technology was indicative of an intent to deceive. This was squarely within the province of the jury, and the Court will not supplant the jury's finding absent a more convincing showing of prejudice.

■ AERT also argues that Mobil's incorrect statements of the law of disclosure "focused the jury on the catch-phrase, rather than whether [the Hearthbrite technology] was prior art." According to AERT, the

jury never understood that "similar technology" was distinct from prior art. Thus, argues AERT, the jury's invalidity findings were prejudiced. The Court is unpersuaded by AERT's argument.

AERT has no basis for asserting that the jury was so prejudiced that it ignored the Court's comprehensive and detailed instructions regarding what constitutes pertinent prior art. As the Court's instructions and the interrogatories to the jury make clear, the question of what is prior art for the purposes of determining the validity of the patent is distinct from the question of what information a reasonable patent examiner would consider important so that it must be disclosed. Based on the jury's answers to the Court's interrogatories, the Court is convinced that the jury understood and carefully applied the law relating to prior art and the validity of patents.

■ The second manner in which Mobil is alleged to have prejudiced the verdict of the jury is by "flagrantly misrepresent[ing] evidence to the jury." Specifically, AERT contends that Mobil's counsel misrepresented to the jury that AERT had been unable to "get a patent" after AERT disclosed Hearthbrite and suggested that this was evidence of the importance of Hearthbrite to the patent examiner's decision. AERT argues that Mobil's misconduct prejudiced not only the jury findings regarding inequitable conduct, but the jury's validity findings as well.

The Court finds that AERT has overstated any alleged misconduct by Mobil. Mobil did not misrepresent evidence to the jury or otherwise make an improper argument. Mobil presented evidence, through the testimony of Mr. Brooks, that AERT had applications pending in the Patent Office, and that in attempting to procure these patents, AERT disclosed the previously undisclosed Hearthbrite. Although there was no evidence that the Patent Office rejected the applications, counsel for Mobil asked the jury to infer that Hearthbrite was the cause for AERT's inability to get its patents. In context of the testimony presented, the Court concludes it was within the bounds of zealous advocacy for Mobil's counsel to ask the jury to draw the inference that the disclosure of

Hearthbrite was somehow stalling or preventing AERT from obtaining its patents. AERT was free to argue to the jury that such an inference was not a reasonable one, or one supported by the evidence. Beyond that, there is no basis for assuming that even if the jury found it to be a material reference for purposes of inequitable conduct, it would also find it an invalidating reference under principles of obviousness.

■ The final manner in which Mobil is alleged to have prejudiced the jury verdict is by interjecting personal opinions regarding the credibility and integrity of AERT witnesses, particularly Joe Brooks. During closing counsel for Mobil stated:

I think it is clear that they will change their allegations whenever it is convenient and whenever it is expedient.

. . . . .

We also think that Mr. Cox started asking some questions, in addition to that, because you are required to disclose everything, and he started to say, because he found out about Forgione, he said, Well, was Forgione at least the starting point of all this?

And we know that Mr. Brooks was concerned about this. We have seen the notes, the Forgione problem. They knew they had a problem with Forgione relating to disclosures.

And then we know something else. Right before Mr. Cox was required to disclose all the relevant prior art to the Patent Office, he was fired, right out of the blue. And they hired a new attorney, who knew a lot less about things going on than Mr. Cox.

What happened? You are going to make the final decision. I think Mr. Cox told Brooks to disclose the Hearthbrite process, and he was fired for it.

Counsel for AERT properly objected, and the Court gave this curative instruction to the jury:

Members of the jury, that is correct. Lawyers should not inject their personal views. They are only permitted to argue

the evidence that has been presented in court.

Therefore, I am going to instruct you to disregard Mr. Williams' last statement about his thoughts of what may have occurred between Mr. Brooks and Mr. Cox.

Although, the Court recognizes that curative instructions will not cure all prejudicial trial errors, the Court is convinced in this instance, that the instruction sufficiently precluded the jury from being biased by counsel's statements of personal opinion. While clearly improper, counsel's statements were not flagrant nor inflammatory, but rather were slight and infrequent deviations into improper argument. Counsel's closing was not pervaded by improper statements of opinion, but rather contained a few isolated uses of the personal pronoun.

Moreover, the Court notes that, unlike *Draper*, where there was a one day delay before a curative instruction was given, the Court gave its curative instruction immediately following the improper statement of counsel. The Court then reminded the jury, in the Court's final instructions, to ignore any statements of opinion by counsel for either party.

### III.  *CONCLUSION*

Because the Court is convinced that the jury was not prejudiced by Mobil's alleged misconduct in reaching its verdict that AERT's patents are invalid as obvious and anticipated, the Court will deny AERT's Motion for a New Trial.